UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                          )
NATHAN TYLER, DANIEL O'NEIL               )
and CARLOS MARQUEZ,                              )
individually and on behalf of all                    )
others similarly situated,                              )
                                                          )
                        Plaintiffs                         )
                                                          )
            v.                                              )            Civil Action No. 06-CV-11354-NMG
                                                          )
SUFFOLK COUNTY, SHERIFF                     )
ANDREA J. CABRAL, in her individual       )
and official capacities, and                          )
SUPERINTENDENT GERARD                       )
HORGAN, in his individual and                   )
official capacities,                                      )
                                                          )
                        Defendants.                     )
_____)

## **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs bring this motion to compel responses to certain document requests and

interrogatories because Defendants Andrea Cabral and Gerard Horgan have improperly sought to

limit the time period about which they will provide discovery. This case is a class action

challenging prison conditions at the Suffolk County House of Correction ("SCHOC"). Defendant

Cabral is the Sheriff of Suffolk County. Defendant Horgan is the Superintendent of the SCHOC.

They are being sued in their individual and official capacities. In their responses to many of

Plaintiffs' document requests and interrogatories, Defendants have objected to providing relevant

information about time periods prior to their respective dates of appointment to these positions or

prior to the beginning of the class period. These arbitrary temporal cutoffs run afoul of Rule

26(b)(1), which permits discovery regarding any matter relevant to the parties' claims or defenses

without regard to time. Defendants' objections also violate Rule 34, which requires parties to produce all documents within their possession, custody, and control, and Rule 33, which similarly requires parties to answer based on information reasonably available to them.

## BACKGROUND

This lawsuit is a class action under 42 U.S.C. § 1983 challenging prison conditions in Building 4 of the Suffolk County House of Correction, where all prisoners have been locked in cells without toilets or sinks for many years. On June 19, 2008, the Court certified a class of all prisoners who have been held in Building 4 since August 3, 2003.

Plaintiffs have sued Suffolk County Sheriff Andrea Cabral and SCHOC Superintendent Gerard Horgan. Defendant Cabral has been sheriff since November 2002. Defendant Horgan has been in his current position since November 2003.

Defendants have sought to defend their policy of locking prisoners in cells without toilets or sinks on a number of grounds. Defendants state that Building 4 has not had toilets or sinks in the cells since opening in 1991, and thus Defendants "inherited" a situation over which they had no input or control. *See* Declaration of David Milton ("Milton Decl."), Ex. E at 3. Defendants further argue that "the safety of staff and inmates" requires that the cells be locked at night, instead of being left open to allow unfettered bathroom access. *See, e.g.,* Milton Decl., Ex. B at 7 (response to Interrogatory No. 13). Defendants also claim that since 2003, when Defendant Horgan became superintendent, they have made bathroom access a priority, and that they have made a number of policy changes to this end. See, e.g,. Milton Decl., Ex. B at 4 (response to Interrogatory No. 5).

Many of Plaintiffs' interrogatories and document requests seek information about SCHOC policies and practices that predate Defendants Cabral's and Horgan's respective appointments as sheriff and superintendent, as well as the beginning of the class period in August 2003. Plaintiffs seek to learn, among other things, what *was* the situation that Defendants claim to have "inherited," what *were* the policies that Defendants allegedly changed, and whether inmates have always been locked in cells in Building 4 (or whether, as Plaintiffs allege in the complaint, the unit was originally designed to be minimum security housing in which the doors were always kept open). In their responses, Defendants have objected to providing this and similar information on the grounds that it is irrelevant, overbroad, and/or unduly burdensome, and that it is beyond their personal knowledge.

## ARGUMENT

### I.   Discovery of Information Concerning Prison Policies And Practices Before The Class Period Is Relevant Under Rule 26(b)(1)

Rule 26(b)(1) permits discovery "into any nonprivileged matter relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The rule "contemplates wide-ranging discovery to the fullest possible extent." *Klonoski v. Malab,* 156 F.3d 255, 267 (1st Cir. 1998); *see also Cabana v. Forcier,* 200 F.R.D. 9, 17 (D. Mass. 2001) ("[T]he scope of discovery under the Federal Rules is very broad."). Discovery "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "[R]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be

relevant to the subject matter of the action." *McCarron v. J.P. Morgan Secs., Inc.,* 2008 WL 2066940, at *2 (D. Mass. May 14, 2008) (citation omitted).

Relevance is not limited by the date of the actions complained of, or by the statute of limitations period. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351-52 (1978). Thus, courts routinely permit discovery into matters that predate – sometimes by many years – the events directly at issue in the lawsuit. *See, e.g., Beesley v. Int'l Paper Co.,* 2008 WL 207537, at *1 (S.D. Ill. Jan. 24, 2008) ("[T]he breaches which occurred during the limitations period may well have resulted from seeds sown outside the period. The six year statute of limitations cannot be invoked to arbitrarily cut off discovery."); *Stalling v. Union Pacific R.R. Co.,* 2003 WL 21317297, at *10 (N.D. Ill. June 6, 2003)(ordering defendant to provide materials predating defendant's ownership of allegedly dangerous railroad at issue); *Schneck v. IBM, Inc.,* 1993 WL 765638, at *5 (D.N.J. July 27, 1993) (ordering discovery over 21 year period because "discovery of keyboard technology in the period prior to the time of Plaintiffs use of keyboards may lead to relevant information").

As the party objecting to discovery, Defendants "bear[] the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Ruran v. Beth El Temple of West Hartford, Inc.,* 226 F.R.D. 165, 167 (D. Conn. 2005) (citations and quotation marks omitted); *accord, e.g., Grider v. Keystone Health Plan Central, Inc.,* 2007 WL 2874423, at *7 (E.D. Pa. Sept. 27, 2007)(collecting cases).

4

Here, Defendants cannot meet this burden. Plaintiffs are entitled to discover what the policies and procedures – and problems – regarding bathroom access were prior to 2003. Defendants claim to have made a number of changes to these policies since 2003. Plaintiffs cannot test these claims, and cannot determine what other remedies to the problems might have been available, without knowing what was done in the past. The relevance of the history of Building 4, and Plaintiffs' need for discovery on matters associated with this history, is underscored by Defendants' own initial disclosures under Rule 26(a)(1). Among the persons Defendants list as likely to have discoverable information that Defendants may use to support their defenses are "Individuals from Prior Sheriff's Administrations," "Boston City Council 1985-1992," and "Boston Penal Commission Officials 1985- 1992." *See* Milton Decl., Ex. D at 3.

For these reasons, Defendants' objections to providing material prior to the class period should be overruled. The particular interrogatories and document requests at issue, together with Defendants' responses, are reproduced and discussed below.

## II.   Defendants' Purported Lack of Personal Knowledge of Matters Prior to Their Tenure Is Not A Basis To Refuse To Answer Interrogatories.

In addition to claiming irrelevance, as discussed above, Defendants have resisted answering many interrogatories on the grounds that they seek information regarding matters that predate their respective tenures in their positions as sheriff and superintendent. Defendants claim to lack any knowledge of such matters. This is an invalid basis for failing to answer interrogatories, as courts have repeatedly recognized. *See, e.g., Essex Builders Group Inc. v. Amerisure Ins. Co.,* 230 F.R.D. 682, 685 (M.D. Fla. 2005) ("The answering party cannot limit his

answers to matters within his own knowledge and ignore information immediately available to

him or under his control.")(citations omitted); *Schenck,* 1993 WL 765638, at \*5 ("A Party may

not limit her answers to discovery to her own personal knowledge. She must answer with any and

all information available to her.") (collecting cases); *Weaver v. Gross,* 107 F.R.D. 715, 717

(D.D.C. 1985) ("[A] party cannot take a purposefully restricted approach to discovery by

furnishing only that information within his immediate knowledge or possession; a party has a

duty to seek that information reasonably available to him from his employees, agents, or others

subject to his control as corporate President.").

   As the number one and two officials in charge of the House of Correction, Sheriff Cabral

and Superintendent Horgan have ready access to information regarding the institution, regardless

of whether such information predates their appointments or is otherwise purportedly outside their

personal knowledge. The nature of these Defendants' positions – which are supervisory and

managerial, and which necessarily rely on reports from others for details about the operations of

the prison – makes their attempt to limit discovery to matters within their "personal knowledge"

inappropriate. The impropriety of their refusal to provide information about SCHOC outside

their personal knowledge is underscored by the fact that they are being sued in their official

capacities as well as their individual capacities. *See Greene v. Fulton,* 157 F.R.D. 136, 142 (D.

Me. 1994)*; cf. Mitchell v. Dep't of Corrections,* 190 F. Supp. 204, 214 (D. Mass. 2002)

("[W]here a suit is brought against individual public officials in their official capacities, such a

suit is effectively to be considered a suit against the officials' office.") (citations omitted). Defendants' objections to particular interrogatories are discussed below.[1]

A.    **Interrogatory No. 13:** Is it the policy or practice to lock the cells in Building 4 each night? If yes, when was the policy or practice begun, and why?

**Defendants' Response:** *Objection. Interrogatory No. 13 is overly broad and unduly burdensome in that it involves a time period dating back to 1991 when SCHC first opened, well beyond the relevant time period of the allegations set forth in the Complaint. Subject to these objection, Sheriff Cabral states to her knowledge, the cells in Building 4 are locked at night to ensure the safety and security of staff and inmates.*

**Plaintiffs' Statement:** Defendants' objection that the interrogatory seeks information beyond the time period of the allegations of the Complaint is invalid, as described above. The information sought in the second half of this interrogatory – were the doors in Building 4 ever unlocked? – is relevant to both the claims and the defenses in this case. If the doors of Building 4 have ever been left open at night in the past, this would potentially undermine Defendants' assertion that security concerns make doing so impossible. If the doors have never been left open at night, this would be relevant to a determination of whether Defendants were aware of any problems or complaints with bathroom access in the past, and what, if anything, they did to address these issues.

---

[1] Plaintiffs propounded identical sets of interrogatories to Defendant Horgan and Defendant Cabral. Their answers to the interrogatories are substantially identical. For the sake of brevity, Plaintiffs only reproduce Defendant Cabral's answers in the body of this memorandum, except in the one instance, noted below, in which the answers do materially differ. Both Defendants' complete responses are attached as Exhibits B and C to the declaration of plaintiffs' counsel.

Defendants' unsubstantiated assertion that it would be "unduly burdensome" to locate this information is entitled to no weight (here, or with respect to Defendants' objections to other interrogatories and document requests). *See, e.g., Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, at *6 (E.D. Pa. Sept. 27, 2007) (party resisting discovery on the grounds of burdensomeness must "demonstrate with specificity and factual detail the exact nature and extent of the burden")(collecting cases).

**B.    Interrogatory No. 11:** Identify the present security classification for Building 4, and all such previous classifications, including the initially intended security classification. Provide the dates of any changes in the classification, and the reasons for any such changes.

**Defendants' Response:** *Objection. Interrogatory No. 11 is overly broad in that it involves a time period dating back to 1991 when SCHC first opened, and is clearly well beyond the relevant time period of the allegations set forth in the Complaint.  Subject to this objection, Defendant Cabral states that she does not know what the initial intended security classification for Building 4 was.  Further answering, Sheriff Cabral states that to her knowledge, since she was appointed Sheriff in November 2002, the security classification for Building 4 has been low medium.*[2]

**Plaintiffs' statement**: This information is relevant to whether Defendants are using Building 4 in the manner in which it was intended to be used. Though Plaintiffs do not dispute that Defendants had no input into the design and construction of Building 4, Plaintiffs are entitled to explore the policy choices that Defendants have made. If, as Plaintiffs allege in the Complaint,

---

[2] In his response to the same interrogatory, Superintendent Horgan states that "to his knowledge," this classification has been in place since 1999.

the building was originally intended to be a minimum security facility in which inmates were not meant to be locked, Plaintiffs are entitled to know this, and to inquire of Defendants why they chose to implement, or to continue, a policy of housing higher-security inmates in Building 4.

Further, Defendants' claimed lack of personal knowledge is not a valid basis to limit their answers – particularly since they are being sued in their official capacities. Defendants are obligated to respond based on the information available to them – information that Defendants, as sheriff and superintendent, would have no difficulty obtaining.

**C.     Interrogatory 14:** Do inmates in Building 4 urinate in containers in their cells during periods when the cells are locked? If yes, when did you first learn of this?

**Defendant Cabral's Response:** *Sheriff Cabral does not have any personal knowledge of inmates in Building 4 urinating in containers in their cells when the cells are locked.*

**Defendant Horgan's Response:** *Superintendent Horgan does not have any personal knowledge of inmates in Building 4 urinating in containers in their cells when the cells are locked. Sometime in 2004 Superintendent Horgan became aware that inmates had urinated in containers on 2 or 3 occasions while in their cell despite being provided with bathroom access on request. Superintendent Horgan does not know whether the cells were locked on those occasions.*

**Plaintiffs' statement:** Defendant Cabral's evasive answer runs afoul of the authority cited above refusing to graft a "personal knowledge" limitation onto Rule 33. It also does not answer the question, which does not ask what Cabral has personally witnessed, but simply whether inmates urinate in containers, and when Defendant "learned" of this (which implies sources other than "personal knowledge"). Whether and when Defendants were aware of

inmates' urinating in containers is, of course, relevant to the adequacy of the steps they took to remedy the problem, and to the legal issue of whether they acted with deliberate indifference under the Eighth Amendment. Defendant Horgan's somewhat more responsive answer – which states that he was informed of occasions on which this practice occurred – recognizes both what the question is asking, and as well as his "duty [under Rule 33] to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Weaver,* 107 F.R.D. at 717.

If after such inquiry, Defendant Cabral is truly unable to provide responsive information, she must "so state under oath and should set forth in detail the efforts made to obtain the information." *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 684 (D. Kan. 1991) (citation omitted). This requirement applies not simply to this interrogatory, but to all interrogatories for which Defendants claim a lack of knowledge.

D.    **Interrogatory 15:** Do inmates in Building 4 defecate in containers in their cells during periods when the cells are locked? If yes, when did you first learn of this?

**Defendants' Response:** *Sheriff Cabral has no personal knowledge of any inmate defecating in a container in a cell during periods when the cell was locked.*

**Plaintiffs' statement :** Both Defendants' answers are deficient for the same reasons discussed above in connection with Interrogatory No. 14.

E.    **Interrogatory 5:** Identify the policymaker or policymakers for SCHC responsible for setting policy or procedures regarding inmate access to bathroom facilities in Building 4 from August 3, 1998, to the present, and your role in setting, implementing, and enforcing such policies or procedures.

10

**Defendants' Response:**  *Objection. Interrogatory No. 5 is overly broad in that it seeks information well beyond the relevant time period of the allegations set forth in the Complaint. Further objection is made on the basis that Interrogatory No. 5 calls for a legal conclusion for which Sheriff Cabral is not qualified to answer.*

*Subject to these objections, Sheriff Cabral states that she was appointed Sheriff in November 2002 and does not have knowledge or information responsive to this Interrogatory prior to that date.[3]  Sheriff Cabral further states that she has had regular communication with Superintendent Horgan since he became Superintendent in November 2003, and he has briefed her concerning the bathroom access in Building 4.  Sheriff Cabral knows that Superintendent Horgan has made inmate bathroom access in Building 4 a significant priority and is aware of the steps he has taken to ensure inmate access to bathrooms, including increased tours by Command Staff and supervisors, changing the Post Orders for the units to require custody staff to provide inmate access to bathroom facilities and to record such access in the logbooks. Sheriff Cabral is further aware that Superintendent Horgan has directed Command Staff, Building Supervisors, Sergeants and the Shift Commanders to ensure compliance with the Post Orders that officers failing to provide bathroom access have been and will be disciplined.*

*Sheriff Cabral further states that under her administration, the Suffolk County Sheriff's Department began to investigate installing a Cell Push Button System which, when activated, allows for automatic unlocking of the cell doors by inmates pressing the cell call-button.  The Department drafted an RFP and put the project out to bid.  At the conclusion of the RFP process*

---

[3] Defendant Horgan's substantive response differs somewhat in ways not material to this motion. Defendant Horgan raises identical objections as Defendant Cabral, and similarly fails to provide information prior to his becoming superintendent in 2003.

*a vendor, Southern Folger, was identified. The Department entered into a contract with Southern*

*Folger to install the system.  The system has been installed and will be operational in December.*

**Plaintiffs' Statement:** Plaintiff is entitled to know who in the past was responsible for

setting policy regarding inmate access to bathrooms. Such individuals are potential witnesses to

events relevant to the parties claims and defenses – specifically, what the bathroom policies and

procedures were prior to the class period (and prior to Defendants' assuming their current

positions), and how, if at all, these differ from current policy. Defendants themselves list

"Individuals from Prior Sheriff's Administrations" in their initial disclosures as individuals likely

to have discoverable information. Defendants claim to have made a number of changes to ensure

inmate bathroom access, such as changing post orders and increasing the number of supervisors.

Plaintiffs cannot evaluate the accuracy of these claims without knowing what the prior situation

was.

F.    **Interrogatory No. 8:** Describe all efforts made from 1998 to the present by agents or

employees of Suffolk County House of Correction to comply with the requirements of 105 CMR

451.112.[4]

**Defendants' Response:**  *Objection.  Interrogatory No. 8 is overly broad, unduly*

*burdensome, seeks information well beyond the relevant time period of the allegations set forth*

*in the Plaintiff's Complaint and is not reasonably calculated to lead to the discovery of relevant*

*and admissible evidence.  Sheriff Cabral was appointed Sheriff of Suffolk County in November*

*2002 and does not have knowledge regarding efforts to comply with the requirements of 105*

---

[4] This is a regulation of the Massachusetts Department of Public Health that provides, "Each inmate or employee shall have access to a toilet and handwash sink at all times." 105 C.M.R. 451.112.

*CMR 451.112 prior to that date.  Further, Sheriff Cabral does not have knowledge of all efforts made by agents or employees of the Suffolk County House of Correction to comply with the requirements of 105 CMR 451.112.*

*Subject to these objections, Sheriff Cabral is aware that the Post Orders for the units in Building 4 have been changed to require custody staff to provide inmate access to bathroom facilities and to record such access in the logbooks.  Sheriff Cabral is further aware that Superintendent Horgan has directed Command Staff, Building Supervisors, Sergeants and the Shift Commanders to ensure compliance with the Post Orders.*

*Further answering, Sheriff Cabral states that beginning in 2005, the Suffolk County Sheriff's Department began to investigate installing a Cell Push Button System which, when activated, allows for automatic unlocking of the cell doors by inmates pressing the cell call-button.  The Department drafted an RFP and put the project out to bid.  At the conclusion of the RFP process a vendor, Southern Folger, was identified.  The Department entered into a contract with Southern Folger to install the system. The system has been installed and will be operational in December 2007.*

**Plaintiffs' Statement:** As discussed, Defendants' purported lack of personal knowledge is not a basis for refusing to provide answer. Past efforts to address the issue of access to toilets, if any, are relevant for the reasons discussed in connection with Interrogatory No. 5, *supra*.

**G.    Interrogatory No. 9:** Describe all efforts made from 1998 to the present by agents or employees of Suffolk County House of Correction to comply with the requirements of 105 CMR 451.113.[5]

      **Defendants' Response:** *Objection.  Interrogatory No. 9 is overly broad, unduly burdensome, seeks information well beyond the relevant time period of the allegations set forth in the Plaintiff's Complaint and is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  Sheriff Cabral was appointed Sheriff of Suffolk County in November 2002 and does not have knowledge regarding efforts to comply with the requirements of 105 CMR 451.113 prior to that date.  Sheriff Cabral states that the Suffolk County Sheriff's Department sought funding and assistance from the Department of Capital Assets and Management (DCAM) to conduct a study regarding the feasibility of installing toilets in cells. The study has been completed and the Department has requested the funding in its budget to install toilets in the cells.*

      **Plaintiffs' Statement:** Defendants' answers are deficient for the reasons stated in connection with Interrogatories Nos. 8 and 5, *supra*.

**III.    Defendants Improperly Limit the Scope of Document Discovery.**

      Rule 34 requires a defendant to produce all documents within its "possession, custody or control." Fed. R. Civ. P. 34(a)(1). "[A] party has control over a document if that party has a legal right to obtain those documents." *Haseotes v. Abacab Int'l Computers, Inc.* ,120 F.R.D. 12 (D.

---

[5] This regulation requires, *inter alia*, that "[e]ach cell within which an individual may be locked for any part of a 24-hour day shall have a working toilet and working handwash sink with hot and cold running water." 105 C.M.R. 451.113.

Mass. 1988) (citing C. Wright & A. Miller, 8 *Federal Practice & Procedure* § 2210 (1970)).

Thus, officers and directors of a corporation have been ordered to produce documents possessed

by the corporation, *see id.*, and the chief of police has been ordered to produce documents in the

possession of the police department. *Greene v. Fulton,* 157 F.R.D. 136, 142 (D. Me. 1994). A

finding that a government defendant has "control" over an agency document is especially

warranted where – as in this case against Sheriff Cabral and Superintendent Horgan – the

defendant is sued in his or her official capacity. *See Greene,* 157 F.R.D. at 142.

A.      **Document request No. 11:** All documents regarding the conversion of what became unit

4-4 into inmate housing, and all documents regarding the closure of this unit.

   **Defendants' Response:**   *Defendants object to Request No. 11 because it is overly broad,*
*unduly burdensome and not reasonably calculated to lead to the discovery of relevant and*
*admissible evidence.  Defendants Cabral and Horgan further state that Unit 4-4 was already*
*being utilized as inmate housing prior to 2002 and 2003, respectively, when Sheriff Cabral and*
*Superintendent Horgan were appointed to their current position.*

   **Plaintiffs' Statement:** The complaint alleges, and Defendants have admitted in their
answer, that Unit 4-4 was not intended to be used as inmate housing. Plaintiffs are entitled to
learn why and when the decision was made to house inmates in quarters not designed for such
use, why and for how long Defendants continued using this unit for inmate housing, and why and
when Defendants made the decision to close this unit. Plaintiffs are also entitled to learn what
efforts, if any, Defendants or their predecessors made to ensure that inmates in this unit had ready
access to bathroom facilities.

**B.**    **Document Request No. 13:**  All documents regarding the security level of Building 4

(such as "minimum-security" or "medium-security") at all times from its opening in 1991 to the

present, including

> (a)    the originally intended designation;
> (b)    the initial designation;
> (c)    any subsequent designations, and
> (d)    the security level(s) at which the facility has actually operated, to the
> extent there has been any variation between the actual level(s) and the
> formal designation(s).

      **Defendants' Response:**  *Defendants object to Request No. 13 because it is overly broad,*

*unduly burdensome, well beyond the relevant time period of the allegations set forth in the*

*Plaintiff's Complaint and not reasonably calculated to lead to the discovery of relevant and*

*admissible evidence.*

      **Plaintiffs' Statement:** As discussed in connection with Defendants' similar objections to

Interrogatory No. 11, Section IIB, *supra*, Plaintiffs are entitled to learn whether Defendants are

using Building 4 as it was intended, and if not, why not.

**C.**    **Document Request No. 15:** All documents that pertain to Department of Public Health

inspections of SCHC from 1998 to the present, including but not limited to

> (a)    inspection reports prepared by the Department of Public Health,
> (b)    plans of correction submitted to the Department of Public Health,
> (c)    replies of the Department of Public Health to such plans of correction,
> (d)    any additional communications, whether formal or informal, between the
> SCHC and the Department of Public Health, including but not limited to any
> consultations by the Department pursuant to CMR 451.406;
> (e)    any SCHC internal notes, correspondence, memoranda or other documents
> regarding such inspections and reports; and
> (f)    all documents regarding actions actually taken in response to such reports,
> replies, and other communications from the Department.

**Defendants' Response to Request No. 15:** *Defendants object to Request No. 15 because it is overly broad, unduly burdensome, and seeks information well beyond the relevant time period of the allegations set forth in the Plaintiff's Complaint. Defendant further objects to the extent such documents are protected by the attorney/client privilege and attorney work product. Subject to these objections see SCSD Policy S112 (Facility Inspections), bate stamped: 000130-000133. Defendants will produce all other responsive documents.*

**Plaintiffs' Statement:** As discussed throughout this memorandum, Plaintiffs are entitled to learn what the situation in Building 4 was prior to the beginning of the class period, which roughly coincides with the beginning of Defendants' respective tenures in their current positions.[6] The annual Department of Health inspection reports, which have addressed the lack of toilets in Building 4 every year since at least 2001, contain relevant information. To avoid unduly burdening Defendants, Plaintiffs limited the request to the five years prior to class period. Defendants have provided audit reports only since 2001. Plaintiffs seek materials from1998 to 2000.

**D.    Discussion of Document Request 16:** This document request (not reproduced here for brevity's sake) is identical to document request No. 15, except that it seeks documents pertaining to annual Department of Correction Audits. Defendants' objections are substantially the same, and Defendants have also provided only 2001 to the present. For the reasons stated above, Plaintiffs seek the reports and related materials dating from 1998.

---

[6] Defense counsel has represented that they are not withholding anything pursuant to their objection based on the attorney-client privilege and the work product doctrine.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel.


RESPECTFULLY SUBMITTED,
For the plaintiffs,

/s/ David Milton
Howard Friedman
BBO #180080
David Milton
BBO #668908
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, Fifth floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com

Dated: June 20, 2008


## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day a true copy of the above
document was served upon the attorney of record
for each party via ECF.

Date:   June 20, 2008          /s/ David Milton
                               David Milton

18